McCoy-Couch Furniture Manufacturing Company v. Zahringer.

4-7606                              186 S. W. 2d 922

Opinion delivered April 23, 1945.

582

*Buzbee, Harrison & Wright* and *McDaniel, Crow & Ward,* for appellant.

*Kenneth C. Coffelt,* for appellee.

MILLWEE, J. This action was brought by appellee, Charles A. Zahringer, for the recovery of wages due him as an employee of appellant, McCoy-Couch Furniture Company, and for a penalty for the nonpayment thereof under the provisions of § 9111 of Pope's Digest. Upon trial to a jury, the evidence tended to establish the following facts:

Appellee testified that he resided at Tull in Grant county, and his mailing address was Detonti, Route 1. He began work at appellant's plant in Benton, Saline county, in January, 1944. While engaged in nailing boxes for appellant, on February 29, 1944, one of the boxes got under a chain conveyor and this caused other boxes to be knocked over and some of them to crash. H. L. McCoy, who was the secretary and general manager of appellant corporation, told appellee he could go "punch out," meaning to punch the time clock. After appellee had punched the clock he told McCoy he had some explaining to do, but McCoy declined to listen and told appellee he was discharged. Appellee then told McCoy that he would not be back and directed that his check be mailed to his address at Detonti, Route 1. Appellee had given this address to appellant the day he was hired. Appellant mailed a letter to appellee on March 29, 1944, directing him to come to the plant and get his check. Employees of the plant received their pay every Friday, but the place and manner of payment is not disclosed by the record. Appellee had worked 13½ hours since receiving his last check of $40 the week before for 40 hours work. If he was being paid

on the same basis at the time he was discharged, his unpaid wages would amount to $13.37.

H. L. McCoy testified that he discharged appellee on February 29, and after appellee had punched the clock they walked outside and appellee insisted that he be paid. McCoy told appellee that it would be impossible for him to get his pay that evening, but it would be ready the next morning. McCoy further testified that appellee at that time made the statement that he was not coming back and that he (McCoy) agreed with him. He denied that appellee requested that his check be mailed to him at Detonti, but stated that the company had his address.

Mrs. Faye Hockersmith, pay roll clerk of appellant, testified that she made a check to appellee on March 3, for $6.97, after deducting 7 cents for social security tax, which represented payment for his last two days' work of 13½ hours, and that she expected him to come back for the check.

At the conclusion of the testimony on behalf of appellee, appellant moved for a directed verdict because appellee had failed to prove that he applied to his foreman or timekeeper and requested that his check be mailed to a designated place in compliance with the statute. Appellant also requested a directed verdict in its favor at the conclusion of all of the testimony. These requests were denied and the jury returned a verdict for appellee in the sum of $300 for both wages and penalty. The trial court entered judgment in accordance with the verdict of the jury and this appeal follows.

Appellant now urges that the judgment should be reversed because the trial court erred in admitting the testimony of appellee that he requested his check be mailed to Detonti, Arkansas. It is insisted that the statute does not require corporations, other than railroads, to forward an employee's wages to him by mail upon demand when the employee is discharged. The statute as originally passed in 1889 applied only to railroad and railway construction companies, but was amended in 1903 and 1905 and, as thus amended, reads as follows:

584

"Section 6649. Whenever any railroad company or corporation or any receiver operating any railroad engaged in the business of operating or constructing any railroad or railroad bridge, shall discharge with or without cause, or refuse to further employ any servant or employee thereof, the unpaid wages of any such servant or employee then earned at the contract rate, without abatement or deduction, shall be and· become due and payable on the day of such discharge or refusal to longer employ; any such servant or employee may request of his foreman or the keeper of his time to have the money due him, or a valid check therefor, sent to any station where a regular agent is kept, and if the money aforesaid, or a valid check therefor, does not reach such station within seven days from the date it is so requested, then as a penalty for such nonpayment, the wages of such servant or employee shall continue from the date of the discharge or refusal to further employ, at the same rate until paid. Provided, such wages shall not continue more than sixty days, unless action therefor shall be commenced within that time. Provided, further, that this act shall apply to all companies and corporations doing business in this state and to all servants and employees who shall hereafter be discharged or refused further employment may request or demand the payment of any wages due, and if not paid within seven days from such discharge or refusal to longer employ, then the penalties hereinbefore provided for railway employees shall attach."

The last proviso was placed in the statute in 1905.* Appellant insists that, since this part of the act does not require the mailing of wages upon request of an employee, it is not applicable to appellant in this case. It appears, however, that this last amendment to the act by its terms makes the entire act applicable to "all companies and corporations doing business in this state," and if it be argued that the statute is silent as to any requirement of corporations other than railway companies to mail checks upon request of an employee, it may also be said that the statute as amended fails to specifically require

---
* Act No. 210 of 1905.

that appellee return to his place of employment and there call for his check.

But, regardless of the respective contentions now urged by the parties, this court in the case of *Wisconsin & Arkansas Lumber Co.* v. *Reaves,* 82 Ark. 377, 102 S. W. 206, construed the act as amended in 1905 against the present contention of appellant. This case was decided in 1907 and Mr. Justice Riddick speaking for the court said: "Under the statute the unpaid wages of Reaves became due on the day of his discharge. He demanded pay, and was given identification checks to be presented to the paymaster of the company. He presented these checks to the paymaster and demanded payment, but the paymaster told him that he would pay him that afternoon. The reason the paymaster desired to wait until the afternoon before making the payment was that he desired to see the foreman of the woods crew to ascertain if there were any charges against Reaves on the books. But Reaves had been discharged about four days previous to the time he made application for his payment. So soon as he was discharged his accounts should have been balanced, and when he demanded his pay he should have been paid. We said in the former opinion that Reaves, after making this demand, had done all the statute required of him, and that he was not compelled to wait several hours to suit the convenience of the paymaster when it was inconvenient for him to do so.

"But, while Reaves was under no obligations to wait, yet the seven days allowed the company by the statute before the penalty for nonpayment attached had not then expired; and a further consideration of the matter has convinced us that, as Reaves could not wait, he should either have notified the paymaster to send his pay to some convenient postoffice or express office, or should have called for his pay at another time. As he went away without giving any directions to the paymaster to send the amount of his wages to another point, the company was justified in supposing that he would call or send to its office for the amount due. As he neither directed the

company to send his wages to his new place of residence nor called for it again at the expiration of the seven days, we do not think any penalty attached, for the evidence shows that the company has at all times since the expiration of the seven days been ready and willing to pay the wages of plaintiff, and has held the same subject to his order.''

The construction thus given the statute was reaffirmed in the later case of *Wisconsin & Arkansas Lumber Co.* v. *Thompson,* 87 Ark. 574, 113 S. W. 340, and this court refused to depart from the rule adopted in the Reaves case, *supra.*

It is true, the statute is highly penal and should be strictly construed, but this does not mean that it should be given an unreasonable construction. We think the interpretation of the statute by the court soon after passage of the 1905 amendment is sound and reasonable, and the Legislature has not seen fit to change the act since these decisions were handed down.

The issue of whether or not appellee directed Mr. McCoy to mail his wages to his postoffice address at Detonti, Arkansas, was sharply disputed, but the jury under proper instructions of the court has decided this issue against appellant upon substantial testimony.

Appellant also insists that appellee did not meet the requirements of the statute that he apply to the foreman or timekeeper for his wages. The case of *Bush, Receiver, St. Louis, Iron Mountain & Southern Railway Company* v. *Coleman,* 131 Ark. 379, 199 S. W. 87, is cited in support of this contention where this court said: ''The words 'foreman or keeper of his time' refer to the immediate foreman or timekeeper, and not to any superior of the discharged employee in the same department. The purpose of the statute is that the demand shall be made either to the superior who has immediate supervision over the discharged employee or the one who keeps his time.'' In that case the laborer was employed at Russellville, Arkansas, where he was discharged and

the station agent at Russellville was the foreman and timekeeper. The employee made demand for payment of his wages upon the master mechanic at Van Buren, Arkansas, who had general supervision over the employees in that department, but it was held that he was not the foreman or timekeeper within the meaning of the statute.

In the instant case, appellee made the demand required of him by the statute upon H. L. McCoy who was general manager, secretary and member of the board of directors of the appellant corporation. Mr. McCoy hired and discharged the men and, for all practical purposes, was exercising immediate supervision over the work of appellee at the time of his discharge by McCoy. While Alfred Kitchen testified that he was foreman and was present when appellee was discharged, the record is otherwise silent as to his duties in connection with the employment of appellee. We think there is ample testimony to support the finding of the jury that H. L. McCoy had and exercised immediate supervision and control over appellee and was, therefore, his foreman within the meaning of the statute.

Finding no error in the record, the judgment of the trial court is affirmed.